IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
Orlando Division
CASE NO: 6:11-cv-1110-ORL-31-KRS

FILED

MELISSA SMITH,

  Plaintiff,

vs.                                    **Complaint — Jury Trial Demanded**

CITY OF NEW SMYRNA BEACH,
a municipal corporation

  Defendant.
_____/

Plaintiff, Melissa Smith, sues defendant, City of New Smyrna Beach, a municipal corporation and shows:

### Introduction

1.      This is an action for sex discrimination and retaliation brought by a female fire fighter/paramedic who — after being told by a battalion chief that "women should not in the fire service" — was harassed and treated poorly by not only the same battalion chief, but by other male firefighters as well because of her gender. After complaining about gender discrimination, she was suspended indefinitely and terminated by the City of New Smyrna Beach. Plaintiff sues for sex discrimination and retaliation under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991,

**The Amlong Firm** • 500 Northeast Fourth Street • Fort Lauderdale, FL 33301 • 954.462.1983

seeking back pay wages, compensatory and punitive damages, and her costs, including attorneys' fees. She invokes the Court's supplemental jurisdiction to pursue her parallel state law claims and remedies under the Florida Civil Rights Act of 1992.

## Jurisdiction and Venue

2.      This Court has federal-question jurisdiction over plaintiff's federal claims pursuant to 28 U.S.C. § 1331. Because the state law claims arose out of the same nucleus of operative facts as the federal claims, this Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

3.      Venue is proper in the Orlando Division of the United States District Court for the Middle District of Florida because the claims arose in Volusia County, Florida.

4.      Defendant is a municipal corporation with its principle place of business in Volusia County, where the cause of action arose.

## Parties

5.      Plaintiff, Melissa Smith ("Smith"), a female firefighter/paramedic who at all times material was employed by defendant, City of New Smyrna Beach ("the City") is protected by Title VII and by the Florida Civil Rights Act because:

a.    She is female; and

b.    She engaged in a protected activity by complaining internally about discrimination and by filing a Charge of Discrimination.

6.    City of New Smyrna Beach ("the City") is a Florida municipal corporation with its principal place of business in Volusia County.  It is an "employer" as defined by 42 U.S.C. § 2000e(b) and § 760.02(7), FLA. STAT. (2011).

## Satisfaction of conditions precedent

7.    Plaintiff, on or about February 11, 2008 filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR"), alleging gender discrimination and retaliation.

8.    The EEOC charge is as follows:

I am a female fire fighter/paramedic employed by the City of New Smyma Beach for the past five years. I have been subjected to a hostile environment based on my gender by I among others, Battalion Chief Michael Coates, who has told me that women should not be in the fire service. Another example is Lt. Paul Owens' refusing to work with me and the only other woman on the department. Lt. Owens has allowed a male fire fighter/EMT to openly refuse to follow my instructions. I have been denied training. I have been unjustiy written up and suspended for actions for which (even had they truly occurred) males would never have been written up. I have been denied proper attire, for example, brush fire pants. I was denied access to overtime after I informed the department that I was pregnant. Lt. Brian Grace instructed me, on the orders of Battalion Chief Kyle Wofford, not to bring tampons to the fire station. There have been numerous other

incidents of discrimination. I have repeatedly complained about gender discrimination to departmental Officers, the human resources director and even the City Manager. Deputy Chief David McCallister falsified an investigation into the way I handled a bus wreck, and caused the Department of Health to open an investigation into my paramedic license — even though the city medical director said I had done nothing wrong. Most recently, Chief Tim Hawver has suspended me indefinitely and proposed terminating me. I feel that the way I have been treated is based on, mender and in retaliation for complaining about unlawful employment practices.

9.    The EEOC on or about April 8, 2011 issued plaintiff a Dismissal and Notice of Rights regarding her Charge of Discrimination, entitling her to file a civil action within 90 says of receipt. This action has been commenced within 90 days.

10.    More than 180 days elapsed since the filing of plaintiff's filing of her Charge of Discrimination without the FCHR's making a finding adverse to plaintiff or conciliating the matter, entitling plaintiff to bring this civil action.

11.    All conditions precedent to the bringing of this action have been performed or waived.

## The applicable statutes

12.    Title VII of the Civil Rights Act of 1964, as amended, provides in pertinent as follows at 42 U.S.C. §§ 2000e-2(a) and 2000e-3 (Sections 703(a) and 704 of the Act):

§ 2000e-2. [§ 703]

(a) It shall be an unlawful employment practice for an employer -

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex ... ; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's ... sex ....

§ 2000e-3. [§ 704]

(a) It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

13.    The Florida Civil Rights Act ("FCRA") provides at § 760.10(1) in

pertinent part, as follows:

It is an unlawful employment practice for an employer:

(a) To discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin, age, handicap, or marital status.

(b) To limit, segregate, or classify employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities, or adversely affect any individual's status as an employee, because of such individual's race, color, religion, sex, national origin, age, handicap, or marital status.

14.    The FCRA further provides at § 760.10(7), in pertinent part,

that:

> It is an unlawful employment practice for an employer ... to discriminate against any person because that person has opposed any practice which is an unlawful employment practice under this section, or because that person has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this section.

## **General Allegations**

15.    On or around April 20, 2003, plaintiff commenced employment as a firefighter paramedic for the City.

16.    Shortly after plaintiff began her employment, Lieutenant Cindy Richenberg, the first female hired by the department, reached out to plaintiff and proposed guidance for "survival" as a female in the department based on her own experience with the City's male firefighters.

17.    On or around April 11, 2004, Battalion Fire Chief, Michael Coates ("Coates") stated in the presence of Lieutenant Owens ("Owens"), "women should not be in fire service and it is up to you to prove otherwise." When plaintiff stated that she believed that she should could work in the fire service as a woman, Coates responded, "if you don't fear me, you won't respect me."

18.    Coates has a history of an inability to work with female firefighters. During plaintiff's employment, Coates has had only one female

placed onto his shift and she asked to be transferred away from him because of his harassing behavior.

19.    On or about September 2008, the City's police Department investigated into allegations that Coates had harassed one of its officers.

20.    During plaintiff's employment, Coates subjected plaintiff to the following treatment based on her sex:

    a.    refusing plaintiff vacation time by telling her that she was still on probation, even though she was not;

    b.    attempting to force plaintiff to sign a letter that purported to waive some of her Union rights and, after plaintiff refused, yelling at her, "if you are looking for a technicality, you better look harder";

    c.    ordering Acting Lieutenant Kirsch ("Kirsch") to write plaintiff up for insubordination because plaintiff showed up fifteen minutes late to a truck wash, even though Coates knew that her reason for being late (taking a shower) had been authorized and approved by Lt. Owens;

    d.    placing a letter in plaintiff's file that cited plaintiff for entering an emergency scene without proper protection, even though plaintiff did not do so, and then disciplining plaintiff for her refusal to sign a letter saying she would never behave that way again; and

   e. failing to discipline male fire fighters who on or about August 16, 2007, really did show up for both a fire and a motor vehickle accident without the correct protective gear.

  21. Additionally, other male supervisors and co-workers subjected plaintiff to the following treatment based on her sex:

   a. Lieutenant Owens refused to call plaintiff by her first name, referring to her only as "kid" and "just another split tail."

   b. On or about October 2007, on behalf of Battalion Chief Chief Kyle Wofford, Lieutenant Grace ordered plaintiff to never bring tampons to the fire station or in her car or else she would be suspended.

   c. In the presence of Jami Ryle ("Ryle") and Kevin Stack ("Stack"), when asking to be removed from a shift with plaintiff and another female firefighter, Owens said, "there is no way I am working with two females...I am not babysitting two girls." When Ryle confronted Owens about the statement, he threatened her and said, "A person would not wake up the next day if they brought a suit against me."

   d. Kirsch yelled at only plaintiff when she was talking to Don Smith, a male co-worker about going to lunch, "you eat when I say so."

   e. During a Hazardous Materials ("Hazmat") class, one or more male co-workers remarked, "your breasts look great in that sweater."

f.      One or more male co-workers remarked, "why don't you come sit on my lap."

g.      On or about April 2007 during a brush fire, plaintiff informed Lieutenant Ofide ("Ofide") that she needed a new pair of brush pants because her current pants were too short. Ofide remarked, "no you don't. You just need to lose weight, because you are fat."

h.      Male fire fighter James Roberts ("Roberts") texted naked pictures of himself and made several inappropriate comments and sexual advances towards plaintiff and Ryle. Plaintiff turned down all of Roberts' advances.

i.      On or around April 20, 2007, two male firefighters told plaintiff that they did not want to work with her. On or around that same day, during a meeting, Roberts stated that he could not work with plaintiff.

j.      On or around May 2007, Lt. Grace harassed plaintiff for personal medical information after she returned from a doctor's appointment. Plaintiff said that she was not comfortable giving personal information. Lt. Grace yelled at plaintiff, "I am your officer, and you will tell me everything." Plaintiff walked away from the argument. The next day, Lt. Grace wrote plaintiff up for improperly washing of a piece of fire apparatus.

k.     Ofide called plaintiff "stupid," "fat," "loud," and told her "I don't know how your husband puts up with you" and "I can't wait to leave this place and tell you what I really think of you."

l.     On or about December 15, 2007, while working on an emergency call on which plaintiff was the ranking driver paramedic, Dave Dearwester, a firefighter EMT, refused to follow plaintiff's orders on patient care and started an argument in front of the patient. The transporting agency that witnessed the altercation filed a complaint regarding Dearwester's refusal to take orders from plaintiff, but nothing was done.

m.     In 2006, Deputy Fire Chief David McAllister told plaintiff to "get pregnant so I could have you as my new secretary instead of having you fight fires."

22.    Other discriminatory treatment practiced and condoned by the City's fire department against plaintiff included:

a.     Telling plaintiff she could not bring in "Cosmopolitan or other girly magazines," but allowing men to have "Playboy" and other men's magazines.

b.     Not allowing women (including plaintiff) to miss Hazmat classes and training sessions, but allowing men to do so;

c.    Requiring plaintiff to perform six exercises for the Hazmat practical course, while requiring men to only perform one;

d.    Allowing the Hazmat instructor to request the students to watch over plaintiff and to inform him or the City if she misbehaved;

e.    Allowing the Hazmat instructor to blame plaintiff in front of the class for making the class stay three additional hours;

f.    Not allowing women (including plaintiff) to make or receive personal phone calls during the Hazmat training sessions, but allowing men to do so;

g.    Allowing the Hazmat instructor to call attention to plaintiff and to instigate the students to harass plaintiff while she was on an emergency phone call with her daughter;

h.    Disciplining plaintiff for posting her fire department e-mail adddress on a social website regarding her union, even though as soon as plaintiff knew she was in violation of a policy, she removed it;

i.    Not disciplining male firefighters who used their fire department e-mail addresses to join religious websites, fantasy football websites, Ebay and gambling websites — all in violation of the same policy;

j.      Allowing Ofide to continue to display sexually explicit material on his computer and to read pornographic magazines at work after plaintiff complained that it made her uncomfortable;

k.      Disciplining plaintiff for leaving an engine cleaning after Lt. Brian Grace inspected the engine and specifically told plaintiff that she could leave — but then telephoned her five minutes later to tell her that she would be written up if she did not return to the station to clean it further, which she did;

l.      Not disciplining a number of male fire fighters who have left their shift without cleaning their fire engines;

m.      Suspending plaintiff for cursing on one occasion, although male co-workers cursed on a regular basis and were not disciplined, because, according to Ofide, "ladies are not supposed to talk like that";

n.      Denying plaintiff training prior to promotional examinations, while providing it to male co-workers;

o.      Providing plaintiff, when she finally was given training, different training than had been given to the male fire fighters; and

p.      Not allowing plaintiff to work overtime Chief Tim Hawyer ("Hawyer") learned she was pregnant.

23.     Plaintiff complained about the harassment and discriminatory behavior internally several times to departmental officials, the human resources director and the City Manager including:

a.     On or about August 16, 2007, informing Chief Wofford and Lt. Grace about the discriminatory comments made by Tyrone Ofide — to which Wofford and Grace responded by saying, "that's just Tyrone" and doing nothing to curb Ofide's behavior;

b.     On or around October 15, 2007, meeting with Carol Hargy, the Director of Human Resources, to complain about the different standards accorded to women and to discuss the harassment she has suffered — to which Hargy responded by suggesting that plaintiff seek mental health counseling;

c.     Requesting of Hargy that the Fire Department have a course or training session on sexual harassment — to which Hargy responded, "there is no money in the budget for that."

d.     Filing a grievance on or about October 19, 2007 to Chief Wofford regarding Ofide's behavior towards her;

e.     Requesting a station change on or about January 16, 2008 to move away from the "hostile work environment";

      f.     Complaining to the City Manager about the harassment and the threat of suspension if she brought tampons to work;

      g.     Complaining to Chief Wofford and Lt. Grace about being denied training and therefore missing out on promotional opportunities that less qualified (but more highly trained) males were getting;

      h.     Filing a Charge of Discrimination with the EEOC and FCHR on or about February 11, 2008, alleging gender discrimination and retaliation;

      i.     Informing Chief Wofford that she feared for her personal safety when working in the field with Roberts because he openly stated that he did not want to work with her and did not communicate with her.

24.    Shortly after filing the grievance on October 19, 2007, Lt. Grace said, "the men are mad you for writing up Ofide ... and now you have a big target on your back."

25.    Notwithstanding plaintiff's having complained to her commanding officers and to City Hall, the harassment continued. Some of the discriminatory treatment that followed plaintiff's complaints about sexual discrimination and/or harassment are:

      a.     While asleep one night, Lt. Grace woke plaintiff up to go wash the truck. This was usually performed in the mornings.

b.     On one occasion, plaintiff was forced to clean the entire station by herself, while the men sat and watched.

c.     Plaintiff was forced to clean and change out a toilet, while the men sat and watched. This was usually performed by a maintenance worker.

d.     The Human Resources Director pulled plaintiff into her office on or about January 8, 2008 and said, "you better fix this war of worlds against the City because you have nothing in writing as to what happened in our meetings, so good luck because I do not recall anything."

e.     On or about January 16, 2008, plaintiff was written up for not properly sending an email that was requested while plaintiff was off duty. After explaining to Chief McCallister that plaintiff attempted to send the email and would be happy to resend it, she was written up and served with an investigation notice.

f.     After plaintiff complained that she thought Chief McCallister's write-up was retaliatory, she received a notice that same day that she was making false accusations and defamatory comments regarding Chief Officers in her letters of appeal regarding previous investigations.

g.     On or about January 18, 2008, plaintiff was told she was being suspended indefinitely for not having current certifications for the

minimal job requirements and that the suspension was not "disciplinary." However, when plaintiff received documentation concerning the suspension, it included a 17-page list of policy violations that plaintiff was alleged to have committed during a call to a fatal accident scene August 27, 2007—which allegations the City forwarded to Florida licensing officials.

      h.    Plaintiff received multiple punishments from the same incident, even though the men who involved in the wreck "INOI0707" were insubordinate, but were never charged or cited.

      i.    After plaintiff was cleared to return to work, she called the Human Resources Director, Hargy, to discuss her return and Hargy stated, "if you come onto New Smyrna Beach property, you will be considered a trespasser ... and that includes any part of the City including all public facilities."

26.    Some of the individuals who accused plaintiff of having conducted herself inappropriately in the "INOI0707" incident were Ofide partisans who had publicly made known their anger at plaintiff for having complained about Ofide's harassing behavior. Plaintiff was informed that Ofide was "one of the boys" and that she should have not complained.

27.     Similarly situated male lead paramedics have performed similarly or worse than plaintiff did on the incident on August 22, 2007 and did not suffer similar disciplinary consequences. For example:

a.     In 2003 or 2004, there was a medical call that included Lt. Ofide, Kirsch and Roberts. All three men abandoned a pediatric mental patient with liver failure on a water dock. The crew was concerned about getting off their shift on time and asked the family to watch the patient as they left. If not for the family calling 911, the patient would have died on the scene.  The men were counseled, but the City did not pursue further discipline.

b.     On or about March 10, 2008, Ofide, Mike Stanford and Kirk Jones were all investigated regarding a complaint about a medical call. An off-duty Seminole firefighter witnessed poor patient care provided by the crew and reported them. These men did not suffer any discipline following this.

c.     In 2010, Coates arrived at a scene smelling of alcohol, was questioned about his decisions and judgment and was ultimately sent home when it because apparent that Coates was drunk. Coates was not disciplined for showing up to a fire call inebriated.

      d.    Chief Wofford was caught cheating on a required EMT refresher exam and was never disciplined.

      e.    Mike Greene admitted to cheating in Paramedic school and was never disciplined.

28.    On or about April 15 2008, plaintiff was terminated.

29.    Approximately four months after plaintiff was terminated, the City held its first sexual harassment training course in over five years.

## Count I: Sex discrimination under Title VII-Hostile Environment

30.    Plaintiff incorporates the allegations of ¶¶ 1-12, 15-18, 20-22, 25-29 as if they were fully set forth in Count I.

31.    Prior to filing this action, defendant the City, acting primarily, but not only, through its agents as alleged more particularly above in ¶¶ 20-22, 25-29, violated plaintiff's rights under Title VII of the Civil Rights Act of 1964, as amended.

32.    Plaintiff's sex was a substantial motivating factor in the conduct alleged above in ¶¶ 20-22, 25-29.

33.    The conduct by the defendant discriminated against plaintiff with respect to compensation, terms, condition, or privileges of employment because of plaintiff's sex.

34.    The sex-discriminatory conduct of defendant and its agents proximately, directly and foreseeable caused plaintiff damages, including but not limited to emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

35.    Plaintiff has no plain, adequate, or complete remedy at law for the actions of defendant, which have caused, and continue to cause, irreparable harm.

36.    Plaintiff is entitled to recover attorneys fees and litigation expenses under 42 U.S.C. § 2000e-5(k).

WHEREFORE, Plaintiff, Melissa Smith prays that this court will grant judgment:

*One*, permanently enjoining defendant, its officers, agents, servants, employees and all other persons in active concert or participation with it from violating the Title VII's prohibition against sex discrimination as to her;

*Two*, awarding judgment against the defendant for the back pay and benefits to which plaintiff would have been entitled but for the defendant's sexually discriminatory acts;

*Three*, awarding judgment against defendant for compensatory damages;

*Four*, awarding plaintiff her costs, including reasonable attorneys' fees; and

*Five,* granting such other and further relief as is just.

## Count II: -Retaliation Under Title VII

37.    Plaintiff incorporates the allegations of ¶¶ 1-12, 23-28 and as if they were fully set forth in Count II.

38.    Plaintiff engaged in a "protected activity" by:

a.    Complaining several times about discrimination, harassment, a hostile work environment and retaliation as more particularly alleged in  ¶ 23.

b.    By filing a charge of discrimination with the EEOC and FCHR.

39.    In response to plaintiff's complaints, the City did not prevent further harassment to the plaintiff.

40.    Plaintiff's protected activity was a substantial motivating factor in the decision to suspend plaintiff indefinitely and ultimately terminate her.

41.    The conduct of the City discriminated against plaintiff with respect to compensation, terms, conditions, or privileges of employment because of plaintiff's protected activity.

42.    The retaliatory conduct of the defendant and its agents in suspending plaintiff indefinitely and terminating her proximately, directly, and foreseeably caused her damages, including but not limited to lost wages and benefits, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

WHEREFORE, Plaintiff, Melissa Smith prays that this court will grant judgment:

*One*, permanently enjoining defendant, its officers, agents, servants, employees and all other persons in active concert or participation with it from violating the Title VII's prohibition against retaliation as to her;

*Two*, awarding judgment against defendant for the back pay and benefits to which plaintiff would have been entitled but for defendant's retaliatory acts;

*Three*, awarding judgment against defendant for compensatory damages;

*Four*, awarding plaintiff her costs, including a reasonable attorneys' fee; and

*Five,* granting such other and further relief as is just.

## Count III - Sex Discrimination Under the FCRA - Hostile Environment

43.    Plaintiff incorporates the allegations of ¶¶ 1-11, 13, 15-18, 20-22, 25-29 as if they were fully set forth in Count III.

44.    Prior to filing this action, defendant the City, acting primarily, but not only, through its agents as alleged more particularly above in ¶¶ 20-22, 25-29, violated plaintiff's rights under the Florida Civil Rights Act.

45.    Plaintiff's sex was a substantial motivating factor in the conduct alleged above in ¶¶ 20-22, 25-29.

46.    The conduct by the defendant discriminated against plaintiff with respect to compensation, terms, condition, or privileges of employment because of plaintiff's sex.

47.    The sex-discriminatory conduct of defendant and its agents proximately, directly and foreseeable caused plaintiff damages, including but not limited to emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

48.    Plaintiff is entitled to recover attorneys fees and litigation expenses under § 760.11(5), FLA. STAT. (2011)

WHEREFORE, Plaintiff, Melissa Smith prays that this court will grant judgment:

***One***, permanently enjoining defendant, its officers, agents, servants, employees and all other persons in active concert or participation with it from violating the FCRA's prohibition against discrimination based on sex;

***Two***, awarding judgment against defendant for the back pay and benefits to which plaintiff would have been entitled but for defendant's sexually discriminatory acts;

***Three***, awarding judgment against defendant for compensatory and punitive damages;

***Four***, awarding plaintiff her costs, including a reasonable attorneys' fee; and

***Five,*** granting such other and further relief as is just.

### **Count IV - Retaliation Under the FCRA - Termination**

49.   Plaintiff incorporates the allegations of ¶¶ 1-11,14,23-28 as if they were fully set forth in Count IV.

50.   Plaintiff engaged in a "protected activity" by complaining

a.   several times about discrimination, harassment, a hostile work environment and retaliation as more particularly alleged in ¶ 23.

b.   By filing a charge of discrimination with the EEOC and FCHR.

51.    In response to plaintiff's complaints, the City did not prevent
further harassment to the plaintiff.

52.    Plaintiff's protected activity was a substantial motivating factor in
the decision to suspend plaintiff indefinitely and ultimately terminate her.

53.    The conduct of the City discriminated against plaintiff with
respect to compensation, terms, conditions, or privileges of employment
because of plaintiff's protected activity.

54.    The retaliatory conduct of the defendant and its agents in
suspending plaintiff indefinitely and terminating her proximately, directly,
and foreseeably caused her damages, including but not limited to lost wages
and benefits, future pecuniary losses, emotional pain, suffering,
inconvenience, mental anguish, loss of enjoyment of life, and other non-
pecuniary losses.

WHEREFORE, Plaintiff, Melissa Smith prays that this court will grant
judgment:

*One*, permanently enjoining defendant, its officers, agents, servants,
employees and all other persons in active concert or participation with it
from violating the FCRA's prohibition against retaliation as to her;

*Two*, awarding judgment against defendant for the back pay and benefits to which plaintiff would have been entitled but for defendant's retaliatory acts;

*Three*, awarding judgment against defendant for compensatory damages;

*Four*, awarding plaintiff her costs, including a reasonable attorneys' fee; and

*Five,* granting such other and further relief as is just.

### Demand for Jury Trial

Plaintiff, Melissa Smith, demands trial by jury on all issues so triable.

Respectfully Submitted,

WILLIAM R. AMLONG
Florida Bar Number 470228
WRAmlong@TheAmlongFirm.com
KAREN COOLMAN AMLONG
Florida Bar Number 27565
KAmlong@TheAmlongFirm.com


AMLONG & AMLONG, P.A.
500 Northeast Fourth Street
Second Floor
Fort Lauderdale, FL 33301-1154
(954) 462-1983

*Attorneys for Plaintiff*